IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RANDY WILLARD,                    )
                                  )
              Plaintiff,          )
                                  )
        v.                        )     1:20-CV-00823
                                  )
INDUSTRIAL AIR, INC.,             )
                                  )
              Defendant.          )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, Chief District Judge.

Before the court is the motion of Defendant Industrial Air, Inc. to dismiss Plaintiff Randy Willard's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 7.) Willard has responded in opposition. (Doc. 11.) The motion requires the court to address the effect on a plaintiff's federal claims of an emergency state court order extending civil limitations periods during the coronavirus pandemic. For the reasons stated herein, the motion will be granted in part and denied in part, thus dismissing Willard's federal claims and remanding his state-law claim for wrongful termination in violation of public policy to state court.

## I.   BACKGROUND

The facts as alleged, taken in the light most favorable to Willard, are as follows:

Willard is a citizen and resident of North Carolina. (Doc.

4 ¶ 3.)  Industrial Air is a corporation organized under the laws of North Carolina with its principal place of business in the state.  (Id. ¶ 4.)

In October 2016, Willard was hired as a welder in Industrial Air's fabrication department.  (Id. ¶ 6.)  His supervisor was Brad Stephens.  (Id. ¶ 9.)  Throughout his employment, Willard performed satisfactorily and received positive feedback.  (Id. ¶ 8.)

In May 2018, Willard and Stephens were having lunch together "when [] Stephens said, 'the biggest problem [with the nation] was all the f***ing n****s on welfare and food stamps' or words to that effect."  (Id. ¶ 9 (alterations in original).)  As Stephens made the comment, Kenny Woods — a black employee — entered the room and told Stephens that he did not approve of his comment.  (Id. ¶¶ 10–11.)  Willard also indicated, "through a facial expression," that he found "Stephens's comment [] highly offensive and objectionable."  (Id. ¶ 10.)

After this incident, Stephens stopped placing Willard in the lead welder position and instead gave Willard menial welding jobs.  (Id. ¶ 12.)  He also reduced Willard's hours and gave him fewer opportunities to earn overtime.  (Id.)  Stephens began denigrating Willard's association with Woods, regularly referring to Woods as "your buddy, Kenny."  (Id. ¶ 13.)

In November 2018, Willard heard a rumor that Stephens was planning to fire both him and Woods.  (Id. ¶ 14.)  Willard

2

approached Stephens about the rumor, and Stephens indicated that it was not true. (Id. ¶ 15.) Despite this assurance, Woods was terminated on December 6, 2018. (Id. ¶ 16.) Shortly thereafter, on December 11, 2018, Willard was terminated. (Id. ¶ 17.) Although the stated reason for Willard's termination was lack of work, Industrial Air kept a number of temporary welders on staff. (Id. ¶¶ 17–18.)

On June 1, 2019, Willard filed a charge of discrimination with the EEOC alleging discriminatory retaliation and associational discrimination based on race. (Id. ¶ 20; Doc. 8-1.) On February 3, 2020, Willard received a Right to Sue letter from the EEOC. (Doc. 4 ¶ 20; Doc. 8-2.) The letter indicated that he had 90 days to bring suit on his claims. (Doc. 8-2.)

On July 31, 2020, Willard brought suit in North Carolina Superior Court, alleging four causes of action against Industrial Air: (1) associational discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), (2) retaliation in violation of Title VII, (3) retaliation in violation of 42 U.S.C. § 1981, and (4) wrongful termination in violation of public policy. (Doc. 4 ¶¶ 21–41.) On September 9, 2020, Industrial Air removed the action to this court. (Doc. 1.) Industrial Air now moves for dismissal of Willard's claims under Federal Rule of Civil Procedure 12(b)(6), arguing untimeliness and failure to state a claim. (Doc. 7.) The motion is fully briefed

and ready for resolution.  (See Docs. 8, 11, 12.)

**II.  ANALYSIS**

    **A.  Legal Standard**

    Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. (8)(a)(2).  Under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn in the plaintiff's favor. Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997).  "Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegation 'to raise a right to relief above the speculative level' so as to 'nudge[] the[] claims across the line from conceivable to plausible.'" Sauers v. Winston-Salem/Forsyth Cnty. Bd. Of Educ., 179 F. Supp. 3d. 544, 555 (M.D.N.C. 2016) (alteration in original) (quoting

4

_Twombly_, 550 U.S. at 555). "[T]he complaint must 'state[] a plausible claim for relief' that permit[s] the court to infer more than the mere possibility of misconduct based upon 'its judicial experience and common sense.'" _Coleman v. Md. Ct. App._, 626 F.3d 187, 190 (4th Cir. 2010) (alterations in original) (quoting _Iqbal_, 556 U.S. at 679). Thus, mere legal conclusions are not accepted as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." _Iqbal_, 556 U.S. at 678. In reviewing a Rule 12(b)(6) motion, the court may "consider documents attached to the complaint, _see_ Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." _Philips v. Pitt Cnty. Mem'l Hosp._, 572 F.3d 176, 180 (4th Cir. 2009).

**B. Title VII Claims**

Industrial Air moves to dismiss Willard's Title VII claims on the basis that they are time-barred by Title VII's 90-day filing requirement. (Doc. 8 at 7–10.) The company argues that as Willard received his Right to Sue letter on February 3, 2020, he was required to bring suit by May 3, 2020, and that he failed to file suit until July 31, 2020. (_Id._ at 8.) In response, Willard makes two arguments as to why the 90-day filing requirement should not bar his claims. First, he contends that as the case was originally filed in North Carolina state court and the Chief Justice of the

5

Supreme Court of North Carolina stayed statutes of limitations due to the COVID-19 pandemic, his suit is timely. (Doc. 11 at 7–8.) Second, he argues in the alternative that the doctrine of equitable tolling should apply to extend the 90-day period such that his claims are considered timely. (Id. at 8–9.)

As the 90-day filing requirement under 42 U.S.C. § 2000e "is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling," Industrial Air's motion to dismiss these claims is properly considered under Rule 12(b)(6). Zipes v. TWA, 455 U.S. 385, 393 (1982); see also United States v. Kivanc, 714 F.3d 782, 789 (4th Cir. 2013) ("The statute of limitations is an affirmative defense that may be raised in a Rule 12(b)(6) motion to dismiss for failure to state a claim.").

### 1. North Carolina's extension of limitations period

On March 19, 2020, the Chief Justice of the Supreme Court of North Carolina issued an order extending the limitations period for civil actions filed in North Carolina courts in light of the COVID-19 pandemic. See Order of the Chief Justice of the Supreme Court of North Carolina (Mar. 19, 2020), https://www.nccourts.gov/assets/news-uploads/COVID-19%20-%2019%20March%202020%20-%207A-39%28b%29%281%29%20Order%20%28FINAL%29.pdf?bba2.JnZLu2WZ0VL0ekFu

shCeYUdih3X.[1]  The extended limitations period applied to all actions that were set to expire between March 16, 2020, and July 31, 2020.  See Order of the Chief Justice of the Supreme Court of North Carolina (May 21, 2020), https://www.nccourts.gov/assets/news-uploads/21%20May%202020%20-%207A-39%28b%29%281%29%20Order%20%28FINAL%29.pdf?2nANI_xM31lYtKvOPf0Je UFxGbY0aWRA.[2]  Because Willard filed his complaint in North Carolina Superior Court on July 31, 2020, he argues, his action is

---

[1] The order provided in relevant part:

       I order that all pleadings, motions, notices, and other documents and papers that were or are due to be filed in any county of this state on or after 16 March 2020 and before the close of business on 17 April 2020 in civil actions, criminal actions, estates, and special proceedings shall be deemed to be timely filed if they are filed before the close of business on 17 April 2020.

       I further order that all other acts that were or are due to be done in any county of this state on or after 16 March 2020 and before the close of business on 17 April 2020 in civil actions, criminal actions, estates, and special proceedings shall be deemed to be timely done if they are done before the close of business on 17 April 2020.

Id. at 1.

[2] The order provided in relevant part:

    1. **Civil Actions, Estates, and Special Proceedings**.

       a. **Time for Filing and for Other Acts Due to be Done**. All deadlines for filing documents and papers and all deadlines for other acts that were due to be filed or done between 16 March 2020 and 1 June 2020, inclusive of those dates, remain extended until the close of business on 1 June 2020 in accordance with my 13 April 2020 order.

       b. **Periods of Limitation**. All periods of limitation that were set to expire between 16 March 2020 and 31 July 2020, inclusive of those dates, are hereby extended until the close of business on 31 July 2020.

Id. at 1.

timely under the extension provided by the North Carolina Supreme Court.

Where a plaintiff brings a federal claim in state court, federal law — including the federal statute of limitations — controls the disposition of the federal claim. See Mann v. Henderson, 134 S.E.2d 626, 628–29 (N.C. 1964) ("Federal laws and regulations, where applicable, are, of course, binding on state courts."); DelCostello v. Int'l Bd. of Teamsters, 462 U.S. 151, 159 n.13 (1983) ("[T]he choice of a limitations period for a federal cause of action is itself a question of federal law."). As such, regardless of whether a federal claim is brought in federal or state court, the federal statute of limitations applies. See Cannon v. Kroger Co., 832 F.2d 303, 305 (4th Cir. 1987) ("[W]e can perceive no justification for allowing a different result simply because the underlying action is initiated in a state court. The substantive rights involved remain purely federal in nature."); Kuhnle Bros., Inc. v. Cnty. of Geauga, 103 F.3d 516, 519–20 (6th Cir. 1997) ("[H]ere there is a single correct statute of limitations under federal law that applies regardless of whether the action is brought in state or federal court. Notions of federalism do not require this court to follow a state court's holdings with respect to federal questions."); see also Johnson v. N.C. Dep't of Transp., 418 S.E.2d 700, 703 (N.C. Ct. App. 1992) (explaining that "the federal statute must prevail"

8

where the state's three-year limitations period directly conflicted with the federal two-year limitations period for claims arising under the Fair Labor Standards Act). That being said, "[i]n actions removed from state court, even those arising from federal law, the federal courts honor state court rules governing the commencement of civil actions, including filing, process, and service of process rules." Shepard v. Lowe's Food Stores, Inc., No. 1:08CV679, 2009 WL 4738203, at *3 (M.D.N.C. Dec. 7, 2009).

Title VII provides that a civil action must "be brought" within 90 days of a claimant receiving notice of his right to bring suit on a claim. 42 U.S.C. § 2000e-5(f)(1) (2020). Because the statute does not specify a required method to initiate suit, courts have interpreted Title VII to allow claimants to commence a Title VII suit in state court in line with the state's statutory method for commencing suit, even if the same method would not commence suit in federal court under the Federal Rules of Civil Procedure. See Lassiter v. LabCorp Occupational Testing Servs., Inc., 337 F. Supp. 2d 746, 752 (M.D.N.C. 2004) (considering Title VII suit timely where state court plaintiff did not file complaint until after the expiration of the 90-day limitations period, but initiated suit pursuant to state procedures prior to the expiration of the 90-day limitations period).

Willard argues that his Title VII claims should be deemed timely because the Supreme Court of North Carolina extended filing

9

deadlines for civil actions. (Doc. 11 at 8.) However, as
Industrial Air points out, Willard's argument ignores the basic
precept that federal claims, even those brought in state court,
are governed by federal law, which includes the applicable statute
of limitations. See DelCostello, 462 U.S. at 159 n.13. Here, the
state Supreme Court's extension of filing deadlines conflicts with
the federally-proscribed 90-day filing requirement for Title VII
suits, such that federal law takes precedence. Although Title VII
suits originally brought in state court may be timely where a
plaintiff has complied with the state's statutory method for
commencing suit within the 90-day limitations period, Willard
failed to do so here.[3] He received notice of his right to bring
suit on February 3, 2020, such that suit had to be brought by May
3, 2020, at the latest. (See Doc. 4 ¶ 20; Doc. 8-2.) But Willard
did not bring suit, or otherwise make any filings, in North
Carolina Superior Court until July 31, 2020. (See Doc. 4.)
Because he failed to commence suit on his Title VII claims within
the 90-day filing period, his Title VII claims are time-barred.

---

[3] Under North Carolina law, a suit may be commenced either by filing a
complaint with the court or by making certain applications to the court.
See N.C. Gen. Stat. § 1A-1, R. 3 (2020). Although North Carolina courts
do not require strict compliance with these requirements to commence
suit, a plaintiff is required to at least "alert the defendant by giving
preliminary notice of the nature of the claim and the purpose of the
suit" through its filings with the court. Roberts v. Coca-Cola Bottling
Co., 124 S.E.2d 105, 107 (N.C. 1962).

## 2. Equitable tolling

Willard next argues that the court should apply the doctrine of equitable tolling to find his claims timely in light of the difficulties presented by the COVID-19 pandemic. (Doc. 11 at 8.) Industrial Air responds that equitable tolling is not appropriate because Willard failed to act diligently in attempting to file his suit within the statutory filing period. (Doc. 12 at 5.)

The doctrine of equitable tolling allows a court to pause the running of the statute of limitations where extraordinary circumstances have been shown. Heimeshoff v. Hartford Life & Acc. Ins. Co., 571 U.S. 99, 114 (2013). But such tolling is permitted only in limited circumstances. Chao v. Va. Dep't of Transp., 291 F.3d 276, 283 (4th Cir. 2002) (describing the circumstances in which equitable tolling may apply as "quite narrow"). "[A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." Id. In order to invoke equitable tolling, a plaintiff must demonstrate both that extraordinary circumstances prevented him from timely bringing suit and that he was diligent in attempting to timely bring suit. United States v. Kwai Fun Wong, 575 U.S. 402, 408 (2015) (quoting Lozano v. Montoya Alvarez, 572 U.S. 1, 10 (2014)). As such, equitable tolling is not appropriate where the claimant "failed to exercise due diligence in preserving

11

his legal rights." <u>Irwin v. Dep't of Veterans Affs.</u>, 498 U.S. 89, 96 (1990).

Other courts that have considered the issue have not found that the COVID-19 pandemic justifies equitable tolling absent a corresponding showing that the pandemic prevented the plaintiff from timely filing suit. <u>See, e.g.</u>, <u>Stanley v. Saul</u>, No. 20-CV-00499-SRB, 2020 WL 6140552, at *4 (W.D. Mo. Oct. 19, 2020) ("Plaintiff . . . does not specifically explain how COVID-19 shutdowns or related issues prevented her from [filing]."); <u>Bailey v. Metro One Loss Prevention Servs. Grp., Inc.</u>, No. 3:20-CV-01513-X, 2021 WL 24543, at *2 (N.D. Tex. Jan. 4, 2021) (concluding plaintiff corporation did not act diligently where, despite New York's COVID-19 restrictions, plaintiff did not arrange to have at least one employee receive the company's mail in the event of a pending lawsuit); <u>Sargent v. S. Cal. Edison 401(k) Sav. Plan</u>, No. 20-CV-1296-MMA (RBB), 2020 WL 6060411, at *5-6 (S.D. Cal. Oct. 14, 2020) (finding plaintiff was not prevented from timely filing her action where, despite California's COVID-19 restrictions, the courthouse remained open for business and plaintiff could have represented herself pro se if she had difficulty obtaining counsel); <u>McGraw v. Nutter</u>, No. CV DKC 20-0265, 2020 WL 7425308, at *4 (D. Md. Dec. 18, 2020) (allowing equitable tolling where court received Title VII complaint one day after the expiration of the limitations period due to COVID-related postal delays).

Willard relies generally on the "chaos created by the pandemic" to support his argument for equitable tolling. (Doc. 11 at 8.) In a series of hypothetical questions, he suggests — but does not assert — that due to the pandemic he was unable to obtain a lawyer and was impeded in filing his claim due to lack of internet access. (Id.) But any suggestion that Willard was unable to obtain a lawyer due to the pandemic is inaccurate. As demonstrated by his Right to Sue letter, Willard had already retained counsel by January 31, 2020.[4] (See Doc. 8-2 at 1 (showing present counsel was copied on the Right to Sue letter).) The only specific assertion that Willard makes regarding the impact of COVID-19 on his ability to file suit is that his counsel contracted COVID-19 at the end of June 2020. As unfortunate as this is, Willard was required to bring suit on his Title VII claims by May 3, 2020, and he fails to explain how his counsel's illness almost two months later prevented his ability to timely file suit.

Taken collectively, Willard has failed to demonstrate that he exercised due diligence in pursuing his rights. As such, the application of equitable tolling to his Title VII claims is inappropriate, and his Title VII claims will be dismissed as time-barred.

---

[4] In light of this inaccurate and distracting suggestion, the court is unwilling to accept Willard's other suggestions, posed in the form of hypothetical questions, as indications of fact. (See Doc. 11 at 8.)

13

## C.    Section 1981 Claim

Industrial Air next moves to dismiss Willard's § 1981 retaliation claim on two grounds.  First, it contends that Willard did not participate in a protected activity.  (Doc. 8 at 10-13.) Second, even if Willard did participate in a protected activity, Industrial Air argues, he failed to allege a causal connection between the protected activity and his ultimate termination.  (Id. at 14-15.)  In response, Willard contends that he has alleged three distinct protected activities: (1) making a negative facial expression in response to his supervisor's racist comment, (2) complaining to his supervisor about rumored plans to terminate him and Woods, and (3) remaining friends with Woods.  (Doc. 11 at 10-11.)  He further argues that a causal connection between his protected activities and the adverse actions he experienced "can clearly be inferred."  (Id.)

Section 1981 "affords a federal remedy against discrimination in private employment on the basis of race."  Johnson v. Ry. Exp. Agency, Inc., 421 U.S. 454, 459-60 (1975).  In relevant part, § 1981 provides, "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42

14

U.S.C. § 2000e-3.

Retaliation claims brought under § 1981 are analyzed under the same standards as Title VII retaliation claims. See Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 271–72 (4th Cir. 2015); Love-Lane v. Martin, 355 F.3d 766, 786 (4th Cir. 2004); Bryant v. Aiken Reg'l Med. Ctrs., Inc., 333 F.3d 536, 543 (4th Cir. 2003); see also White v. Gaston Cnty. Bd. of Educ., No. 3:16-CV-552, 2018 WL 1652099, at *7 (W.D.N.C. Apr. 5, 2018) ("Federal courts analyze violations of Section 1981 . . . under the same standards as Title VII."). In order to state a claim for retaliation under § 1981, a plaintiff must show that (1) he engaged in protected activity, (2) the employer took an adverse action against him, and (3) a causal connection existed between the protected activity and the adverse action. Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 258 (4th Cir. 1998); Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998). It is the first and third elements of the offense that Industrial Air challenges here.

Willard contends that he engaged in protected activity under the opposition clause within § 1981 because his actions indicated that he opposed specific unlawful employment practices within Industrial Air. See 42 U.S.C. § 2000e-3.

"Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's

15

discriminatory activities." <u>Laughlin</u>, 149 F.3d at 259 (citing <u>Armstrong v. Index J. Co.</u>, 647 F.2d 441, 448 (4th Cir. 1981)); <u>see also</u> <u>Boyer-Liberto</u>, 786 F.3d at 281 ("Employees engage in protected oppositional activity when, inter alia, they complain to their superiors about suspected violations." (internal quotation marks omitted)). "When an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity." <u>Crawford v. Metro.</u> <u>Gov't of Nashville & Davidson Cnty., Tenn.</u>, 555 U.S. 271, 276 (2009) (internal quotation marks omitted). Even non-verbal conduct may constitute protected oppositional activity where the conduct is purposive and effective in communicating an employee's opposition to perceived unlawful practices. <u>See</u> <u>DeMasters v.</u> <u>Carilion Clinic</u>, 796 F.3d 409, 417 (4th Cir. 2015); <u>Collazo v.</u> <u>Bristol-Myers Squibb Mfg., Inc.</u>, 617 F.3d 39, 47–48 (1st Cir. 2010) (cited approvingly in <u>DeMasters</u>, 796 F.3d at 417); <u>Crawford</u>, 555 U.S. at 277 ("[W]e would call it 'opposition' if an employee took a stand against an employer's discriminatory practices not by 'instigating' action, but by standing pat, say, by refusing to follow a supervisor's order to fire a junior worker for discriminatory reasons."); <u>see also</u> <u>id.</u> at 282 (Alito, J. concurring) (indicating that even silent opposition must be "active and purposive" in addressing unlawful discrimination).

16

Willard maintains that he has engaged in three distinct oppositional activities. First, he argues that he engaged in a protected activity by making a negative facial expression in response to Stephens's racist comment. While this is non-verbal conduct, the conduct may qualify as protected oppositional activity if it communicated a belief that the company committed a discriminatory act.

In his complaint, Willard alleges that his facial expression indicated disapproval of comments that created a racially hostile work environment. (Doc. 4 ¶¶ 10, 35.) Standing alone, this is a conclusory statement that is not afforded a presumption of truth. While non-verbal conduct has occasionally been found to be protected, the conduct must communicate opposition to an employer's allegedly discriminatory actions. See Crawford, 555 U.S. at 276. For example, in Collazo, a plaintiff was found to have engaged in protected non-verbal oppositional activity where he repeatedly accompanied a subordinate to meetings with Human Resources to file and pursue a sexual harassment claim. 617 F.3d at 47–48. Though the plaintiff was silent in those meetings, the First Circuit found that his act of accompanying his subordinate to the meetings "effectively and purposefully communicated his opposition" to her treatment. Id. By contrast, Willard made a momentary facial expression in reaction to a racially-offensive statement. Even accepting Willard's allegation that his facial

17

expression communicated that "Stephens's comment was highly offensive and objectionable," this is not a clear indication that Willard opposed a perceived unlawful employment practice.[5]  Even if Willard consciously opposed the statement as creating an unlawful hostile work environment, a single responsive facial expression to the statement is neither an effective nor purposive communication of that opposition to constitute a protected activity for the purposes of § 1981.

Second, Willard contends that he engaged in a protected activity when he confronted Stephens about rumors that he and Woods would soon be terminated.[6]  The complaint does not indicate that the conversation with Stephens implicated race or discrimination.

_____

[5] Willard's characterization of the subject facial expression has shifted over time.  In his EEOC charge, he stated that he "may have made a face that showed [he] was surprised [Stephens] would say something like that." (Doc. 8-1.)  In his opposition to the present motion, he states he "recoiled in shock at the racist comment . . . and made a facial expression of extreme reprobation and disgust." (Doc. 11 at 3.)  While counsel's statements in his brief are not allegations and cannot be considered, neither the allegation in the complaint nor the EEOC charge, if considered, suffices.

[6] While Willard's brief states that he confronted Stephens "about discriminatory conduct" and that he "complained to [Stephens] about a plan to terminate [Woods] because he is black," (Doc. 11 at 4, 11), these contentions do not appear in either Willard's EEOC charge or his complaint. Both the EEOC charge and the complaint indicate that Willard confronted Stephens regarding a rumor that Stephens would soon have him and Woods fired. (See Doc. 8-1; Doc. 4 ¶¶ 14-15.)  According to the EEOC charge and complaint, the conversation consisted of Willard asking Stephens if the rumor was true and Stephens denying it. (See Doc. 8-1; Doc. 4 ¶ 15.)  There is no suggestion — prior to Willard's opposition — that the topics of race or discrimination were mentioned in that conversation. (Id.)  For the purposes of the present motion, the court accepts the facts as alleged in the complaint.

18

(See Doc. 4 ¶¶ 14, 15.) The conversation appears to have revolved solely around whether Stephens had told other employees that Willard and Woods would soon be terminated. (See id.) Based on the facts as alleged, this conversation fails to have communicated Willard's belief that Industrial Air engaged in discriminatory conduct. See Harris v. Home Sales Co., 499 F. App'x 285, 293 (4th Cir. 2012) (citing Barber v. CSX Distrib. Servs., 68 F.3d 694, 701-02 (3d Cir. 1995) which concluded that a letter complaining about general unfair treatment without reference to discrimination is not a protected activity).[7] As Willard did not complain of perceived discriminatory conduct, but rather complained about the general unfairness of possible termination, this conversation does not constitute a protected activity under § 1981.

Lastly, Willard contends that he engaged in protected activity by remaining friends with Woods despite poor treatment from his supervisors. (Doc. 11 at 11.) In a series of hypotheticals, but without citing authority, Willard suggests that maintaining his friendship with Woods is a protected activity where the friendship was under "constant assault" by his supervisors.[8]

_____

[7] Unpublished opinions of the Fourth Circuit are not precedential but can be cited for their persuasive but not controlling authority. See Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006).

[8] Willard's complaint does not detail the alleged assault on his friendship with Woods. The complaint indicates only that Stephens "denigrated Plaintiff's association with his Black friend, Mr. Woods" and, in conversations with Willard, referred to Woods as "your buddy, Kenny." (Doc. 4 ¶ 13.)

19

(Id.)  However, in order for informal conduct to constitute a protected oppositional activity for a § 1981 retaliation claim, Willard's conduct must have purposefully communicated some belief that Industrial Air engaged in discriminatory conduct.  Willard's response to the present motion implies that his continued friendship with Woods was not intended to communicate opposition. (See Doc. 11 at 11.)  Instead, he alleges that "his supervisor *viewed it* as an act of defiance." (Id. (emphasis added).)  This does not suggest that Willard, through his continued friendship with Woods, was intentionally opposing unlawful discriminatory conduct such that the friendship could be considered oppositional activity.  Further, the complaint contains no factual allegation that would otherwise support such an inference.  Therefore, the court cannot conclude that Willard's friendship with Woods constitutes a protected activity that supports a § 1981 retaliation claim.[9]

As Willard has failed to allege that he engaged in protected activity, the court need not consider whether Willard has sufficiently claimed a connection between an adverse action and

---

[9] The court does not consider to what extent Willard's friendship with Woods could form the basis of § 1981 associational discrimination claim, as Willard has not brought, nor does he argue, a claim on that basis. See Barrett v. Whirlpool Corp., 556 F.3d 502, 519–20 (6th Cir. 2009) (distinguishing between plaintiff's hostile work environment claim based on associational discrimination and plaintiff's retaliation claim).

his protected activity.  Willard's § 1981 retaliation claim will therefore be dismissed.

### D.  Wrongful Termination in Violation of Public Policy

Willard's final claim — wrongful termination in violation of public policy — arises under North Carolina law.[10]  Federal courts "enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995); see also 28 U.S.C. § 1367(c) (2020) (explaining that a "court[] may decline to exercise supplemental jurisdiction over a claim . . . [when it] has dismissed all claims over which it has original jurisdiction").  Relevant considerations in deciding whether to exercise supplemental jurisdiction include "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." Shanaghan, 58 F.3d at 110.  Generally, these factors weigh in favor of declining jurisdiction "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988); see also id. at 350 n.7 ("[I]n the usual

---

[10] The court lacks original jurisdiction over this claim.  First, as a state law claim independent of federal law, the court cannot exercise federal question jurisdiction over this claim.  See 28 U.S.C. § 1331 (2020).  Second, as both Willard and Industrial Air are considered citizens of North Carolina, the court does not have diversity jurisdiction over this claim.  See id. § 1332.

21

case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims.").

Willard's state law claim is particularly ill-suited for resolution by this court. Specifically, Willard's claim for wrongful termination in violation of public policy is at least partially based on a theory of associational discrimination. (See Doc. 4 ¶ 41.) At present, "[n]o North Carolina appellate court appears to have addressed whether discrimination due to an interracial relationship equates to race discrimination." Sampson v. Leonard, No. 4:10-CV-121-D, 2012 WL 3822193, at *6 (E.D.N.C. Sept. 4, 2012), aff'd sub nom. Sampson v. Hospira, Inc., 531 F. App'x 388 (4th Cir. 2013) (citing N.C. Gen. Stat. § 143-422.2 (2020)). As the court must not "create or expand [North Carolina] public policy," Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (quotations omitted), it declines to exercise supplemental jurisdiction over this claim. See Waybright v. Frederick Cnty., Md., 528 F.3d 199, 209 (4th Cir. 2008) ("With all its federal questions gone, there may be the authority to keep [the case] in federal court . . . but there is no good reason to do so."). As Willard's federal claims have been dismissed, "the better path" is to remand Willard's case back to state court. Id.;

22

see also Carnegie-Mellon, 484 U.S. at 353 (observing that "a remand may best promote the values of economy, convenience, fairness, and comity" when a federal court determines that "the exercise of [supplemental] jurisdiction over [the] case[] would be inappropriate").

Industrial Air's motion to dismiss Willard's claim for wrongful termination in violation of public policy will therefore be denied, and the claim will be remanded to state court for further consideration.

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that Industrial Air's motion to dismiss (Doc. 7) will be GRANTED in part and DENIED in part as follows:

1. The motion is GRANTED as to count I (associational discrimination in violation of Title VII), count II (retaliation in violation of Title VII), and count III (retaliation in violation of § 1981), which are DISMISSED WITH PREJUDICE.

2. The motion is DENIED WITHOUT PREJUDICE as to count IV (wrongful termination in violation of public policy), and the case will be REMANDED to the General Court of Justice, Superior Court Division, of Guilford County, North Carolina, for further consideration of that claim.

23

```
                                    /s/   Thomas D. Schroeder
                                  United States District Judge
January 29, 2021
```