IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| RANDY WILLARD, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) 1:20-CV-00823 |
| INDUSTRIAL AIR, INC., | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, Chief District Judge.

Before the court is the motion of Defendant Industrial Air, Inc. ("Industrial Air") for attorneys' fees. (Doc. 17.) Plaintiff Randy Willard has responded in opposition. (Doc. 20.) For the reasons set forth below, the motion will be denied.

**I. BACKGROUND**

From October 2016 to December 2018, Willard was employed as a welder in Industrial Air's fabrication department.[1] (Doc. 4 ¶¶ 6, 17.) In May 2018, Willard was having lunch with his supervisor, Brad Stephens, "when [] Stephens said, 'the biggest problem [with the nation] was all the f***ing n****s on welfare and food stamps' or words to that effect." (Id. ¶ 9 (alterations in original).) The comment was overheard by Kenny Woods — a black

---

[1] The facts outlined here are those alleged in Willard's complaint and relied upon by the court in its prior opinion. (See Docs. 4, 13.) The court does not rely upon any new factual allegations brought by the parties in relation to the pending motion. (See, e.g., Doc. 20-1.) As such, the court does not address Industrial Air's objections to the recitation of facts in Willard's opposition. (See Doc. 21 at 3-4.)

employee — who told Stephens that he did not approve of his comment. (Id. ¶¶ 10-11.) Willard also indicated, "through a facial expression," that he found "Stephens's comment [] highly offensive and objectionable." (Id. ¶ 10.) Following this incident, Willard received less favorable treatment overall, and Stephens began denigrating his association with Woods. (Id. ¶¶ 12-13.) Ultimately, in December 2018, both Willard and Woods were terminated. (Id. ¶¶ 16-17.)

In June 2019, Willard filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging discriminatory retaliation and associational discrimination based on race. (Id. ¶ 20; Doc. 8-1.) He received a Right to Sue letter from the EEOC on February 3, 2020, and filed suit in North Carolina Superior Court on July 31, 2020, alleging multiple violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), retaliation in violation of 42 U.S.C. § 1981, and wrongful termination in violation of public policy. (Doc. 4 ¶¶ 20-41; Doc. 8-2.) Industrial Air removed the action to this court (Doc. 1) and filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 7).

On January 29, 2021, this court granted in part and denied in part Industrial Air's motion to dismiss. (Doc. 13.) Because Willard failed to file suit within the 90-day statutory filing period and no basis existed to equitably toll the limitations

2

period, his Title VII claims were dismissed as time-barred. (Id. at 10.) His § 1981 retaliation claim was dismissed for failure to state a claim because Willard did not sufficiently allege participation in protected oppositional activity. (Id. at 17-21.) With his federal claims dismissed, the court remanded to state court his claim for wrongful termination in violation of public policy. (Id. at 23.)

On March 9, 2021, Industrial Air filed the present motion for attorneys' fees pursuant to 42 U.S.C. § 2000e-5(k). (Doc. 17.) Willard opposes the motion. (Doc. 20.) The motion is now fully briefed and ready for resolution. (See Docs. 19, 20, 21.)

## II. ANALYSIS

Industrial Air moves for attorneys' fees in relation to Willard's Title VII and § 1981 claims on the basis that it is the prevailing party and that Willard's claims were frivolous. (Doc. 19 at 7-8.) Industrial Air argues that Willard's Title VII claims were frivolous because he pursued the claims despite the lapse of the limitations period. (Id. at 9-10.) It further argues that his § 1981 claim was frivolous because Willard's facial expression clearly did not constitute "protected activity." (Id. at 10-12.) In response, Willard argues that his Title VII claims were not frivolous, despite the expiration of the limitations period, because a plaintiff is not required to anticipate affirmative defenses and he presented a viable argument that the limitations

3

period should be tolled. (Doc. 20 at 7-9.) In relation to his § 1981 claim, he argues that the claim was not frivolous because, although he ultimately did not prevail, the claim was colorable. (Id. at 10-13.)

"Before deciding whether an award of attorney's fees is appropriate in a given case, . . . a court must determine whether the party seeking fees has prevailed in the litigation." CRST Van Expedited, Inc. v. E.E.O.C., 136 S. Ct. 1642, 1646 (2016). A defendant is considered to have prevailed where "the plaintiff's challenge is rebuffed, irrespective of the precise reason for the court's decision . . . even if the court's final judgment rejects the plaintiff's claim for a nonmerits reason." Id. at 1651. Here, in relation to Willard's Title VII and § 1981 claims, Industrial Air is the prevailing party. Each of these claims was dismissed on Industrial Air's 12(b)(6) motion, thereby rebuffing Willard's challenge.[2] As Industrial Air is the prevailing party, the court must consider whether an award of attorneys' fees is appropriate.

---

[2] Industrial Air would not, however, be considered the prevailing party in relation to Willard's claim for termination in violation of public policy, as the court remanded that claim to state court for further consideration. (Doc. 13.) While that claim was ultimately dismissed with prejudice in state court (Doc. 21 at 2-3), Industrial Air has not argued for attorneys' fees in relation to the state-level proceedings for that claim. (See Doc. 19; Doc. 21 at 3 n.1.) Because the court did not reach the merits of that claim and Industrial Air does not appear to argue for attorneys' fees for the claim (see Doc. 19 (discussing only Willard's Title VII and § 1981 claims)), the court does not consider the imposition of attorneys' fees in relation to that claim.

4

As a general rule, each party bears its own attorneys' fees unless there is express statutory authorization to the contrary. Hensley v. Eckerhart, 461 U.S. 424, 429 (1983). In Title VII cases, attorneys' fees are explicitly made available pursuant to 42 U.S.C. § 2000e-5(k). "[I]n any action or proceeding under [Title VII], the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs . . . ." 42 U.S.C. § 2000e-5(k). In relation to § 1981 cases, attorneys' fees are available pursuant to 42 U.S.C. § 1988, which provides that "the court, in its discretion, may allow the prevailing party, . . . a reasonable attorney's fee as part of the costs." However, under both § 2000e-5(k) and § 1988, attorneys' fees are awarded differently based on the identity of the prevailing party. Roadway Exp., Inc. v. Piper, 447 U.S. 752, 762 (1980); see also Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 416-17 (1978); Blair v. Hamstead, 802 F.2d 451 (4th Cir. 1986). While a prevailing plaintiff generally may recover attorney's fees, a prevailing defendant should recover fees only where the "court finds that [the plaintiff's] claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so" or that the plaintiff brought a claim in bad faith. Christiansburg, 434 U.S. at 422; see also Gist v. Union Cnty. Dep't of Soc. Servs., 838 F.2d 466 (4th Cir. 1988). The Supreme Court has "directed the

5

district court to be particularly sensitive to the broad remedial purposes of Title VII and the danger that attorneys' fee awards in favor of defendants can discourage 'all but the most airtight claims'" and "cautioned against *post hoc* reasoning which presumes the merits of the claim to attorneys' fees from the outcome of the case." Arnold v. Burger King Corp., 719 F.2d 63, 65 (4th Cir. 1983) (discussing Christiansburg, 434 U.S. at 422).

Here, Willard's claims were not so lacking in merit as to justify an award of attorneys' fees to Industrial Air. First, although Willard incorrectly argued that the state statute of limitations should govern his Title VII claims, he presented a not unreasonable argument that the limitations period should be equitably tolled in light of the COVID-19 pandemic. While the argument ultimately did not prevail, this does not necessarily mean the claims were frivolous. The argument for equitable tolling warranted a reasoned analysis in order for the court to determine whether such tolling should be applied. As discussed in this court's earlier opinion, other courts have allowed tolling due to the COVID-19 pandemic in certain circumstances. (See Doc. 13 at 12.)

Second, Willard's § 1981 retaliation claim was also not patently meritless. In bringing a claim based upon his supervisor's comment, he set out an incident of an alleged racially hostile work environment. See Boyer-Liberto v. Fontainebleau

6

Corp., 786 F.3d 264, 282 (4th Cir. 2015) (indicating an isolated incident of harassment may constitute a hostile work environment). Willard then identified three potential acts that arguably constituted protected oppositional activity: his facial expression in response to Stephens's comment, a conversation regarding a rumor about his impending termination, and his friendship with Woods.[3] Although the court found that none of the acts sufficiently conveyed his opposition to perceived discriminatory conduct such that they were protected under § 1981, Willard's arguments were not wholly meritless. See, e.g., DeMasters v. Carilion Clinic, 796 F.3d 409, 416–17 (4th Cir. 2015) (indicating oppositional activity

---

[3] Although Willard now claims that he brought an associational discrimination claim under § 1981 (Doc. 20 at 9), this is inaccurate. As this court noted previously, Willard claimed his association with Woods constituted protected activity to support a retaliation claim pursuant to § 1981. (See Doc. 13 at 20; see also Doc. 4 ¶ 35 (alleging "retaliation in violation of 42 U.S.C. § 1981" and claiming "Plaintiff engaged in conduct protected by § 1981 . . . in associating with a person of different race").) A claim of retaliation is distinct from a claim of associational discrimination. See Barrett v. Whirlpool Corp., 556 F.3d 502, 512–13 (6th Cir. 2009) (distinguishing between "[d]iscrimination based on association" and "[d]iscrimination based on advocacy"). Here, rather than claiming he was subject to discrimination based upon his association with Woods under § 1981, Willard claimed he was subject to retaliation for his opposition to a hostile work environment, expressed in the form of associating with Woods. (See Doc. 4 ¶ 35); see also Barrett, 556 F.3d at 520 ("[Plaintiff] has not established a claim for retaliation, as the bulk of the instances of discrimination and harassment against her were based on her association with black employees, not on opposition to any unlawful conduct."). The court previously explained that it did "not consider to what extent Willard's friendship with Woods could form the basis of § 1981 associational discrimination claim, as Willard has not brought, nor does he argue, a claim on that basis." (Doc. 13 at 20.) Although Willard did bring a claim of associational discrimination under Title VII (Doc. 4 ¶¶ 21–25), that claim was time-barred (Doc. 13 at 13).

7

may include non-verbal conduct); Barrett v. Whirlpool Corp., 556 F.3d 502, 515 (6th Cir. 2009) (discussing associational discrimination and retaliation); Singh v. Green Thumb Landscaping, Inc., 390 F. Supp. 2d 1129, 1135 (M.D. Fla. 2005) (stating "[p]laintiff cites a number of cases in support of his position that Title VII recognizes a cause of action based on close association third party retaliation claims" and collecting cases). Taken collectively, this conduct does not render Willard's § 1981 retaliation claim frivolous. An award of attorneys' fees is therefore not warranted.

In response to Willard's opposition, Industrial Air further argues, without citing authority, that Willard's claims were frivolous because he failed to communicate with his counsel following initiation of this action. (See Doc. 21 at 5-6.) Willard's conduct with his attorney does not speak to the merits of his claims. As the court has determined that Willard's claims were not so meritless as to justify an award of attorneys' fees, the court declines to award fees based on conduct external to his claims against Industrial Air.

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that Industrial Air's motion for attorneys' fees (Doc. 17) is DENIED.

8

                                   /s/    Thomas D. Schroeder
                                  United States District Judge

May 3, 2021